UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**AMERICAN PROPERTY - MANAGEMENT CORPORATION, a New Mexico corporation, d/b/a ESPLENDOR RESORT AT RIO RICO,**

        **Plaintiff,**                    **No.** 1:17-cv-00764-KK-WPL

**v.**

**LIBERTY MUTUAL GROUP, INC.**

        Defendant.

## MOTION TO TRANSFER VENUE TO THE U.S. DISTRICT COURT OF ARIZONA, TUCSON DIVISION, OR, ALTERNATIVELY, DISMISS ON GROUNDS OF FORUM NON CONVENIENS AND SUPPORTING AUTHORITY

Defendant Liberty Mutual Fire Insurance Company ("Liberty"), incorrectly referred to as Liberty Mutual Group, Inc. in the caption, pursuant to 28 U.S.C. § 1404(a), moves this Court to transfer the venue of this matter to the United States District Court of Tucson, Arizona or, alternatively, to dismiss this action based upon the doctrine of *forum non conveniens*.

Liberty requested concurrence in this Motion from Plaintiff's counsel on July 27, 2017. Plaintiff opposes this Motion.

    I.   **INTRODUCTION AND BACKGROUND**

This case arises from a June 5, 2015 fire at Plaintiff's resort in Rio Rico, Arizona ("Property"), just south of Tucson. Liberty issued an insurance policy to Plaintiff with a mailing address of San Diego, California ("Policy"). The Policy provides coverage for losses at the Rio Rico location, subject to the terms of the Policy. *See* July 7, 2015 letter to Plaintiff at its San Diego mailing address, attached hereto as **Exhibit 1**. The parties dispute the value of the damages, among other things, and Plaintiff alleges common law bad faith, breach of contract,

violations of the Unfair Trade Practices Act, and violations of the Unfair Claims Practices Act arising out of Liberty's adjustment of the claim. Additionally, Liberty has declined to toll the Policy's requirement that repairs be performed within two years of the loss, as is set forth in Liberty's counsel's May 18, 2017 letter to Plaintiff's representatives in Scottsdale, Arizona. *See* May 18, 2017 letter, Doc. 1-6, filed 7/25/17.

The Plaintiff in this case was incorporated in New Mexico on or around 1990. In 2000, the President and CEO, Michael Gallegos, relocated Plaintiff's headquarters to San Diego, California, which is Plaintiff's mailing address. *See* N.M. Corporation Search, Doc. 1-2, filed 7/25/17; Bloomberg Report, Doc. 1-3, filed 7/25/17; News Article, Doc. 1-4, filed 7/25/17; Insurance Policy, Bate No. POLICY 14, Doc. 1-5, p. 5 of 11, filed 7/25/17. Michael Gallegos is located in the San Diego area. *See* foregoing references. The broker of record, AmWINS Brokerage of the Mid-Atlantic, LLC, is located in New Jersey. *See* Insurance Policy, Bate No. POLICY 12, Doc. 1-5, p. 4 of 11, filed 7/25/17. The Policy was issued to Plaintiff "through" AmWINS. *See id.* Liberty Fire Insurance Company is a foreign corporation incorporated under the laws of the State of Wisconsin, with its principal place of business located in Boston, Massachusetts. Liberty Group, Inc. is a foreign corporation incorporated under the laws of Massachusetts, with its principal place of business located in Boston, Massachusetts.

Liberty issued a RM Select Policy to Plaintiff effective 3/1/2015 to 3/1/2016, which was a renewal policy. *See* Insurance Policy, Bate No. 14, Doc. 1-5, p. 5 of 11, filed 7/25/17. Two copies of the Policy were sent to the broker in New Jersey. *See* March 12, 2015 email, **Exhibit 2** hereto; August 15, 2015 email series, **Exhibit 3** hereto. The Policy listed 10 property locations, three in San Diego, two others in California, two in Ohio, and two in Arizona, all of which were additional insureds. Insurance Policy, Bate No. 19, Doc. 1-5, p. 7 of 11, filed 7/25/17. The Policy does not list any properties in New Mexico. *Id.*

After the June 5, 2015 at the Property, Plaintiff retained public adjuster Greenspan Company as its agent to manage the claim. Josh Scott, located in Scottsdale, Arizona, was Greenspan's main liaison during the adjustment of the claim and, as such, was Plaintiff's main liaison. Liberty's Steve Harkness, located in the Phoenix, Arizona area, adjusted the claim on behalf of Liberty. Liberty retained Donn Teonsfeldt of Construction Analytics, Hemet, California, to assist in evaluating the claim and obtaining bids. The claim was adjusted in Arizona; and a majority of the witnesses involved in the post-accident adjustment, including inspecting, estimating, restoration, etc. are located in Arizona, with some of the experts located in California.

In its Complaint, Plaintiff does not allege that any relevant events occurred in New Mexico. The only factual allegations in the Complaint that relate to New Mexico are that Plaintiff was incorporated in New Mexico, Plaintiff's principal place of business is in New Mexico, and James Long, a Director, resides in Albuquerque. Complaint, ¶¶ 1, 2. Although Plaintiff claims violations of New Mexico's Unfair Trade Practices Act and Unfair Insurance Practices Act based upon the insurance contract and the adjustment of the claim, the contract was not issued in New Mexico and the adjustment of the claim did not occur in New Mexico and, accordingly, New Mexico law does not apply to interpretation of the Policy or to Liberty's adjustment of the claim.

Although this case has only a *de minimus* connection to New Mexico, Plaintiff elected to file this action in New Mexico. Because the events pertinent to Plaintiff's claim occurred in Arizona, however, New Mexico is an incredibly inconvenient forum in which to litigate this matter. Of particular concern, key witnesses and the site of the fire are all located in Arizona, with some expert witnesses located in California. Liberty accordingly asks this Court to exercise

its discretion under 28 U.S.C. § 1404(a) to transfer this matter to the United States District Court of Tucson, Arizona or, alternatively, dismiss this case based upon the doctrine of *forum non conveniens*.

## II. THIS COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT COURT OF TUCSON, ARIZONA WHERE VENUE IS PROPER.

### A. *Legal standard.*

The sole connection between the allegations in the Complaint and New Mexico is that Plaintiff was incorporated in New Mexico and has a principal place of business in New Mexico, albeit that its President, headquarters, and mailing address are in San Diego. Therefore, venue should be transferred to the District Court of Tucson, Arizona, which is permitted by the change of venue statute:

> For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

As an initial matter, Liberty notes that this case could have been brought in the District Court of Tucson Arizona. 28 U.S.C. § 1391 governs venue. Section 1391(b) provides:

> A civil action may be brought in –
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Venue in the District Court of Tucson, Arizona is proper because all of the property that is the subject of this action is located in Rio Rico, Arizona, which is a part of that District, and because the alleged events and omissions occurred in Arizona.

Because this matter could have been brought in the District Court of Tucson, Arizona, the Court may apply § 1404(a) to transfer venue to the District Court of Tucson, Arizona. Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to "an individualized, case-by-case- consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). Among the factors a district court should consider are:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967).

Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed. *Employers Mut'l Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167-68 (10th Cir. 2010). However, courts accord little weight to a plaintiff's choice of forum "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Id.* at 1168 (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.,* 816 F.Supp. 667, 669 (D.Kan. 1993)). The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient. *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515 (10th Cir. 1991).

   B.  *The relevant factors weigh in favor of transfer.*

In this case, the cumulative effect of the factors requires a change of venue to Tucson, Arizona. Although Plaintiff is incorporated in New Mexico and a Director lives in New Mexico, with Albuquerque being the principal place of business in New Mexico, Plaintiff's headquarters are in San Diego, Plaintiff's President and CEO is in San Diego, and the Policy was issued to Plaintiff's San Diego address through Plaintiff's broker in New Jersey. The Policy does not provide any coverage whatsoever to any property in New Mexico, while providing coverage to properties listed with Arizona, California, Ohio, and Washington locations. The fire occurred in Arizona and was adjusted in Arizona. The Court can take judicial notice that Rio Rico is approximately 490 miles from Albuquerque, over 8 hours by car, and that Rio Rico is approximately 66 miles from Tucson.

The second and most important factor, the accessibility of witnesses, strongly favors transfer. *See Employers Mut'l Cas. Co.,* 618 F.3d at 1169 ("The convenience of witnesses is the most important factor in deciding a motion under § 1404(a).") The vast majority of witnesses all reside outside of New Mexico and would likely fall outside the subpoena power of this Court. To demonstrate inconvenience, that movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that use of compulsory process would be necessary. *Scheidt v. Klein,* 956 F.2d 963, 966 (10th Cir. 1992). Although this case is just beginning, Liberty identifies the following witnesses:

- Anthony Shaffer, Plaintiff's employee, Rio Rico, Arizona. Plaintiff's contact who reported the claim and liaison for initial site inspection(s).
- Steve Harkness, Liberty, Chandler, Arizona (Phoenix area). Liberty adjuster who adjusted the claim, 2015 until June 2017.
- Josh Scott and Jim Warren, Greenspan, Plaintiff's agent, Scottsdale., Arizona. Greenspan was Plaintiff's agent and contact during the adjustment of the claim, from 2015 through the present.

- Donn Teonsfeldt, Construction Analytics, Hemet, CA. Consultant retained by Liberty to evaluate the claim and obtain bids. Involved in the evaluation from 2015 through the present.
- Lorin Jacobson, Jacobson Custom Homes, Tubac, Arizona. Prepared rebuild / repair bid that Liberty accepted.
- Michael Gallegos, Plaintiff's CEO and President, San Diego, California. Some of Liberty's communications, *e.g.,* reservation of rights letter, were sent to him.
- James Long, Plaintiff's Director. Some of Liberty's communications, *e.g.,* reservation of rights letter, were sent to him. He retained Greenspan.
- James Madison, P.E., Starling Madison Lofquist, Inc., Phoenix, Arizona. Retained by Liberty to perform two structural fire assessments and structural repair recommendations.
- Pat Andler, Andler & Associates, Phoenix, Arizona. Retained by Liberty to investigate cause and origin investigation of fire.
- Eric Wingham (Phoenix) and Anthony Colon (Tucson) of American Technologies, Inc., Arizona. Restoration services, demolition, assisted in origin and cause, board up, and inspection re salvageable property and possible temporary restaurant setup. Prepared late repair bid that was not accepted.
- Scott Trimmer, STā Architecture, Mesa, Arizona. Retained by Liberty to propose architectural and engineering services and assess code issues.
- Ryan Erickson, Sr. Industrial Hygiene Technician, Envirocheck, Phoenix, Arizona. Retained by Liberty to investigate smoke damage.
- Logan Erickson, Sr. Industrial Hygiene Technician, Envirocheck, Phoenix, Arizona. Retained by Liberty to investigate asbestos.
- Belfor Property Restoration, Tucson, Arizona. Prepared numerous bids that did not follow scope of work and were not accepted.
- Les P. Caid, Rio Rico Fire Chief, Rio Rico, Arizona. Involved in determining code requirements, including upgrades, for rebuild.
- Dan Memefee, Santa Cruz County Building Inspector, Rio Rico, Arizona. Involved in determining code requirements, including upgrades, for rebuild.
- Brandy Ungar, Hagen, Streiff, Newton & Oshiro (HSNO), Irvine, CA. Liberty retained HSNO to determine business loss.
- Chris Glenister, Greenspan, Scottsdale, Arizona. Plaintiff's analysis of loss of business income.
- Tom Stone, P.E., Stone Engineering, Phoenix, Arizona. Prepared recommendations for HVAC and plumbing systems.
- Steve Aquilar and Stephanie Burbage, HUB International Insurance Services, Albuquerque. Retail agent that had limited communications with both parties re status of claim.
- Michael Engel, Carrier Johnson + Culture, San Diego, CA. Retained by Plaintiff to address code upgrades.

Based upon the foregoing, the only nonparty witness in New Mexico is HUB International, the retail agent. As such, none of these witnesses except HUB can be compelled to attend a trial in New Mexico since they live in Arizona and California – outside the Court's subpoena power. *See* Fed. R. Civ. P. 45. The inability to compel witnesses to attend a trial in New Mexico, when the presence of the majority of them other than the experts could be compelled in Arizona, would likely lead to the inability to present live testimony from key witnesses at the trial. *See Garcia-Martinez v. City and County of Denver,* 392 F.3d 1187, 1191, 1193 (10th Cir. 2004) (deposition testimony is less desirable and a second-best substitute for oral testimony; the preference for a witness' attendance at trial is axiomatic). To provide the parties an opportunity to present as much live testimony as possible, this matter should be transferred to Arizona.

The fact that many witnesses live in Arizona means that a transfer to the District Court of Tucson, Arizona would substantially reduce the costs of obtaining their testimony, another factor in analyzing a motion to transfer. *See Price v. Takata Corp.,* 2008 WL 11319690, *3 (D.N.M. August 14, 2008). To the extent it is feasible to get Arizona witnesses to testify in New Mexico, which is questionable, it will be far more expensive for the parties to procure their attendance in New Mexico, as their attendance will require them to incur transportation and lodging costs. If the case is tried in Tucson, travel costs for the Arizona witnesses would be minimal (mileage) to nonexistent. It would also likely cost less to travel from California to Arizona than from California to New Mexico.

Another factor bearing on the convenience of the two potential forums is the applicability of Arizona law. In the instant case, New Mexico law does not apply to any of Plaintiff's claims. Plaintiff's claims for breach of contract and common law bad faith arise out of the insurance

policy. *See* Complaint, ¶¶ 81, 82 (addressing duty to act in good faith in performance of a contract). Under New Mexico's choice of law rules, the court will apply the doctrine of *lex loci contractus* – the law of the place of contracting – to the question of insurance afforded under the Policy. *Ferrell v. Allstate Ins. Co.*, 2008-NMSC-042, 144 N.M. 405, 421; 188 P.3d 1156. Generally, the place of making an insurance contract is "the state where the insured entered into the contract." *See id.* The Supreme Court of New Mexico explained that "[w]hen interpreting a contract under the lex loci contractus rule, courts look to the law of the place where the contract was consummated.…" *State Farm Mut'l Ins. Co. v. Conyers*, 1989-NMSC-071, 109 N.M. 243, 248, 784 P.2d 986, 991 (applying New Mexico law); *see also Sheppard v. Allstate Ins. Co.,* 21 F.3d 1010 (10th Cir. 1994) and *Yumukoglu v. Provident Life & Acc. Ins. Co.,* 131 F. Supp. 2d 1215, 1221 (D.N.M. 2001) (interpretation of insurance contracts is governed according to the law of the place where the contract was executed or consummated). Further, "[a] contract is consummated where the last act necessary for its formation was performed" and "[a] contract is made at the place where the last signature is affixed." *Conyers,* 784 P.2d at 991 (citing *Pound v. Insurance Co. of North America*, 439 F.2d 1059 (10th Cir. 1971)).

In *Biotronik, Inc. v. Lamorak Ins. Co.*, No. CIV. 15-00252 WJ/WPL, 2015 WL 3522362, \*2, \*12 (D.N.M. June 3, 2015), which has analogous facts, this Court found that Oregon law would apply to insurance coverage dispute under New Mexico's *lex loci contractus* choice of law rules because the policies at issue "were solicited and negotiated by [the insured's] broker in Oregon … and all three Policies were delivered to [the broker] in Portland, Oregon" and the insured was headquartered in Oregon); s*ee also Wilkeson v. State Farm Mut'l Auto. Ins. Co.*, 2014-NMCA-077, ¶¶ 2, 5, 329 P.3d 749, 750, cert. denied sub nom. 2014-NMCERT-006, 328 P.3d 1188 (under *lex loci contractus*, California law applied to the insurance dispute because the

9

insured resided in California at the time the policy was issued and the policy listed the insured's California address); *Shope v. State Farm Ins. Co.*, 1996-NMSC-052, 122 N.M. 398, 925 P.2d 515 (Virginia law applied under *lex loci contractus* because the policy was "entered into" in Virginia—the insureds resided in Virginia at the time they purchased the policy and they purchased the policy through a Virginia insurance agent).

In the instant case, the terms of the Policy were negotiated with a Liberty representative in Philadelphia and the broker, AmWINS Insurance of the Mid-Atlantic, located in New Jersey. *See* **Exhibit 3** hereto, March 2015 email series. The Policy was mailed and emailed to the broker in New Jersey and listed Plaintiff's address in San Diego, where it is headquartered. *See* **Exhibits 2 and 3**; Policy, Doc. 1-5, pp. 4, 5 (filed 07/25/17). Documents signed for the renewal of the Policy for the 3/01/15 to 3/01/16 policy period were signed by Michael Gallegos, the CEO located in San Diego. *See* Policyholder's documents signed February 25, 2015, **Exhibit 4** hereto. Billing and invoicing was through AmWINS, the broker in New Jersey. *See* Billing information, **Exhibit 5** hereto. Pursuant to the foregoing, either California law or New Jersey law would apply to interpretation of the Policy and the related bad faith claim arising out of the Policy. *See Biotronik; Wilkeson.* Although the Complaint generally alleges that Mr. Long signed a RM Select policy, it is unclear as to what that means, and the Complaint contains no other allegations that would indicate that New Mexico law would apply to interpretation of the Policy; the foregoing documents and case law indicate that New Mexico law would not apply.

More importantly, Plaintiff's claim was adjusted in Arizona. As such, Arizona's Claims Practices Act would apply to the adjustment of the claim. Further, Plaintiff's Unfair Trade Practices claim is based upon services Plaintiff received with regard to adjustment of the claim, *see* Complaint, ¶ 103. Therefore, since the claim was adjusted in Arizona, Arizona's Unfair

Trade Practices Act would be the operative act. The Complaint contains no allegations that would indicate that New Mexico law would apply in regard to either of the statutory claims.

The Tenth Circuit has expressed a preference in diversity cases for "the action to be adjudicated by a court sitting in the state that provides the governing substantive law." *Employers Mut'l,* 618 F.3d at 1169; *see also Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.,* 123 F.Supp.2d 569, 581 (D. Kan. 2000) (transferring an action to a federal district court whose substantive law applied to the contract). Accordingly, when considering the factors pertinent to the convenience of the forum selected by Plaintiff, it is clear that the District Court of Tucson, Arizona is a far more convenient forum in which to litigate this Arizona-based case. Transferring this matter to Tucson will allow better access to the sources of proof and key witnesses and will reduce the burden and expense incurred by the parties in connection with this action. A transfer to Tucson will also have the benefit of allowing an Arizona court to apply Arizona law with regard to the adjustment of the claim. Liberty, therefore, respectfully requests that this Court transfer this case to the District Court of Tucson, Arizona.

### III. ALTERNATIVELY, LIBERTY REQUESTS THAT THIS COURT DISMISS THIS CASE BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS.*

*A. Applicable law.*

In the alternative, this Court should dismiss this case based upon the doctrine of *forum non conveniens.* In this case, the two threshold questions that inform the *forum non conveniens* analysis militate in favor of dismissal: "whether there is an adequate alternative forum in which the defendant is amenable to process" and "whether foreign law applies." *Gschwind v. Cessna Aircraft Co.,* 161 F.3d 602, 605-06 (10th Cir. 1998) (citations omitted). The adequate alternative forum is the District Court of Tucson, Arizona, the district where the fire and the subsequent adjustment of the claim occurred. Liberty is amenable to process in Arizona. Further, because the

11

Complaint alleges conduct that occurred in the adjustment of the claim in Arizona, the law of Arizona applies to Liberty's actions subsequent to the fire, which is contained in the substantive allegations of the Complaint.

Having answered these questions in the affirmative, the court should weigh various private and public interests bearing on the *forum non conveniens* decision. *Id.* at 605-06. The private interest factors to be considered are: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive. *Id.* at 606 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The public interest factors include: (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law. *Id.*

    B. *The private factors support dismissal.*

The private factors were addressed in the paragraphs regarding transfer of venue: the proof is in Arizona; the majority of witnesses are in Arizona; witnesses are not subject to compulsory process in New Mexico; any view of the premises would occur in Rio Rico, Arizona; and a trial in Arizona would far outweigh any trial in New Mexico in terms of ease, expedition, and expense. These private factors all support dismissal.

    C. *The public factors also support dismissal.*

The most significant public factors supporting a dismissal for *forum non conveniens* are

the imposition of jury duty upon a community with no or a *de minimus* relation to the litigation – if the matter were tried in Albuquerque – and the local interest in having localized controversies decided at home. Here, an Albuquerque jury would hear that Plaintiff incorporated in New Mexico and then moved its headquarters to San Diego. Plaintiff's resort is 490 miles away in another state. The fire occurred in Arizona, and the adjustment of the claim occurred in Arizona. The vast majority of contractors and other vendors evaluating the damages and working at the site were from Arizona, with some from California and none from New Mexico. It is doubtful that a New Mexico jury would have any interest in the Rio Rico fire. *See Employers Mut'l,* 618 F.3d at 1168 (courts give little weight to plaintiff's choice of forum "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum"). On the other hand, the fire was locally reported in the Tucson area and Plaintiff's employees would most likely be local.

Additionally, since this case is in its infancy, Liberty submits that refiling the case in Arizona would not result in any significant administrative difficulties and would be in the interests of justice. Furthermore, there are more Arizona judges than New Mexico judges, and Arizona judges have fewer cases per year than New Mexico judges. The District of Arizona has 13 judges with yearly caseloads of 750 cases (12-month period ending 3/31/2015), 793 cases (12-month period ending 3/31/2016), and 931 cases (12-month period ending 3/31/2017). In contrast, the District of New Mexico has 7 judges with yearly caseloads of 899 cases (12-month period ending 3/31/2015), 963 cases (12-month period ending 3/31/2016), and 962 cases (12-month period ending 3/31/2017). *See* Administrative Office of the United States Courts, Federal Court Management Statistics, *available at* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2017 (2017).

Furthermore, the judges in Arizona have fewer pending cases over the last three 12-month periods and fewer weighted filings in the last 12-month period. Arizona judges have a much shorter time from filing to disposition. *See id.; Employers Mut'l,* 618 F.3d at 1169 (identifying the most relevant statistics when addressing difficulties that may arise from crowded dockets). As such, Arizona District Courts are less congested than New Mexico District Courts.

Finally, an Arizona court would be familiar with the applicable Arizona law.

WHEREFORE, based upon the foregoing, Liberty respectfully requests that this Court transfer this case to the Tucson District of Arizona pursuant to 28 U.S.C. § 1404(a) or, alternatively, dismiss this case based upon the doctrine of *forum non conveniens.*

Respectfully submitted,

RAY, McCHRISTIAN & JEANS, P.C.

By * /s/ Shannon A. Parden*
      Shannon A. Parden
      6000 Uptown Blvd NE, Suite 307
      Albuquerque, New Mexico 87110
      Tel: (505) 855-6000
      Fax: (505) 212-0140
      sparden@rmjfirm.com
      *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was emailed and served through CM/ECF this 31st day of July, 2017, to counsel of record.

      */s/ Shannon A. Parden*
      Shannon A. Parden