# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

AMERICAN PROPERTY–
MANAGEMENT CORPORATION,
A NEW MEXICO CORPORATION,
D/B/A ESPLENDOR RESORT AT
RIO RICO,

    Plaintiff,

v.                                                   Civ. No. 17-764 KK/JHR

LIBERTY MUTUAL GROUP, INC.,

    Defendant.

## ORDER ON MOTION TO TRANSFER VENUE

**THIS MATTER** is before the Court on Defendant's *Motion to Transfer Venue to the U.S. District Court of Arizona, Tucson Division, or, Alternatively, Dismiss on Grounds of Forum Non Conveniens and Supporting Authority* ("Motion"), filed July 31, 2017. (Doc. 7.) The Court has considered the parties' submissions, the relevant law, and the record, and is otherwise fully advised in the premises. The Court finds that Defendant's Motion is well taken and shall be granted.

**I.**      **Background**

This lawsuit, which was originally filed in the State of New Mexico, County of Bernalillo, Second Judicial District Court, was removed to this Court by Defendants on the basis of diversity jurisdiction. (Doc. 1-7 at 1.) Plaintiff, American Property Management, is a New Mexico corporation with its principal place of business in this state. (Doc. 1 at 2.) Plaintiff

manages the Esplendor Resort at Rio Rico (the Resort), which is located in Rio Rico, Arizona. (Doc. 2-1 at 2.) Rio Rico is approximately 66 miles south of Tucson. (Doc. 7 at 1, 6.) Defendant, Liberty Mutual Group Incorporated, is a Wisconsin corporation with its principal place of business in Boston, Massachusetts. (Doc. 1 at 2.) The Resort is covered by an insurance policy issued by Defendant. (Doc. 2-1 at 2; Doc. 7 at 1.)

### A. Facts Related to the Issuance of the Insurance Policy

As noted, Plaintiff is a New Mexico corporation, with its principal place of business in New Mexico. (Doc. 2-1 at 1.) James Long, the director of American Property Management is a resident of Albuquerque. (*Id.*) Plaintiff's headquarters and its corporate mailing address are in San Diego, California, where its president and CEO, Michael Gallegos live. (Doc. 7 at 2; Doc. 1-2 at 1; Doc. 1-3; Doc. 1-4.) The insurance policy was brokered by AmWINS Brokerage of the Midatlantic, LLC, which is located in Edison, New Jersey. (Doc. 1-5 at 4; Doc. 7 at 2.) The insurer, Defendant Liberty Mutual Group Incorporated, is a Wisconsin corporation with its principal place of business in Boston, Massachusetts. (Doc. 1 at 2.) The insurance policy reflects Plaintiff's San Diego, California mailing address. (Doc. 1-5 at 5.).

### B. Summary of Plaintiff's Factual Allegations

On June 5, 2015, the Resort was damaged by a fire, whereupon Plaintiff filed an insurance claim with Defendant to recover its fire-related losses. (Doc. 2-1 at 2-3.) Two years later, in June 2017, Plaintiff filed the present lawsuit—claiming bad faith, breach of contract, unfair trade practices, and unfair claims practices, based on Defendant's handling of its insurance claim. (Doc. 2-1 at 10-13.) Briefly summarized from the complaint, Plaintiff alleges the following.

The Resort's lobby, kitchen, dining area, and bar and lounge were damaged by the fire. (Doc. 2-1 at 2.) Plaintiff's claim for the loss was assigned to Defendant's Arizona-based adjuster, Steven Harkness. (Doc. 2-1 at 3.) To assist in managing its claim, and to act as its "point of contact" regarding its claim, Defendant hired The Greenspan Company (Greenspan), an independent insurance adjustment company located in Arizona. (*Id.*; Doc. 7 at 6; Doc. 16 at 6-7.) James Long—a resident of Albuquerque and the director of American Property Management—contacted Defendant on at least one occasion to request that it honor its obligations under the insurance policy by providing advanced funds. (Doc. 2-1 at 1, 4.) In addition to these individuals, a number of contractors, subcontractors, and "representatives" of each party were involved in assessing the damage at the Resort and estimating the value of the repairs. (*See* Doc. 2-1 at 3-4.)

Plaintiff alleges that immediately after the fire, and for the two years that followed, it made several requests and claims for losses that, it maintains, should have been covered by the at-issue insurance policy—including claims for "Business Loss of Income," "Preliminary and Partial Business Loss of Income," bids for cleaning, bids for loss of personal property, a request to shut down the resort pending repairs, and an estimated cost of restoring the Resort to its pre-fire condition of $3.5 million. (Doc. 2-1 at 3-9.) Plaintiff alleges that in handling its claim, Defendant variously failed to respond or was dilatory in responding to Plaintiff's requests for coverage and to its coverage-related inquiries; refused to provide information regarding site visits by contractors and subcontractors; was dilatory in acquiring bids to repair the Resort; acquired an insufficient number of bids; and, when it ultimately estimated the cost of restoring the Resort, relied on a bid that grossly underestimated the cost of restoration and did not include the costs associated with county-mandated building code requirements. (Doc. 1-2 at 3-9.)

Plaintiff alleges that Defendant's wrongful handling of its insurance claim resulted in a delay in reconstructing and repairing the Resort and, in August, 2016, led to the Resort's temporary closure. (Doc. 1-2 at 9.)

## II. Discussion

In the Motion presently before the Court, Defendant seeks to have this case transferred to the Tucson division of the United States District Court of Arizona which, Defendant claims, is the proper venue for litigation of this matter because the resort is located within that Court's jurisdiction in Rio Rico, Arizona, and the "events and omissions" giving rise to this lawsuit occurred there. (Doc. 7 at 5.) Alternatively, Defendant moves for dismissal based upon a theory of *forum non conveniens*. (Doc. 7 at 11.) Plaintiff opposes the Motion, arguing that New Mexico, its "home state" and its chosen litigation forum, is the proper venue for litigation of this matter, and arguing further, that this case does not comprise the "rare circumstance" in which dismissal is warranted on the ground of *forum non conveniens*. (Doc. 16 at 1-2.)

For the reasons that follow the Court concludes that it is appropriate, pursuant to 28 U.S.C. Section 1404(a), to transfer this case to the United States District Court for the District of Arizona. In light of this conclusion, the Court does not consider Defendant's argument that dismissal is warranted on the ground of *forum non conveniens*.

### A. The Law Governing a Motion to Transfer Venue

28 U.S.C. Section 1404(a), which governs venue transfer, was enacted "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense" by authorizing the easy transfer of actions to a more convenient federal forum. 17 James Wm. Moore, Moore's Federal Practice §111.11 (3d ed. 2013). It provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The Court may generally transfer an action to another federal forum under Section 1404(a) if two requirements are met: (1) the transferee district is one in which the action might have been brought originally, and (2) the transfer will enhance the convenience of the parties and witnesses, and it is in the interest of justice. *Van Dusen v. Barrack*, 376 U.S. 612, 616-17 (1964). The party seeking the transfer bears the burden of establishing these factors. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) ("The party moving to transfer a case pursuant to [Section] 1404(a) bears the burden of establishing that the existing forum is inconvenient."); Moore, *supra*, § 111.12[2][c] ("As with the other requisites for convenience transfers . . . the party seeking transfer . . . has the burden of clearly establishing that the action properly could have been brought in the first instance in the transferee district[.]"). Whether to grant a motion to transfer venue falls within the Court's discretion, and is driven by the particular circumstances of each case. *Chrysler Credit Corp.*, 928 F.2d at 1516.

### 1. This Lawsuit Could Have Been Originally Filed in Arizona

As to the first requirement, whether the transferee district is one in which the action might have been brought originally, the parties' briefing does not present a conflict. 28 U.S.C. Section 1391(b)(2), which governs venue, provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2). Under this statute, "venue is not limited to the district with the most substantial events or omissions"; rather, "venue can be appropriate in more than one district" and even "in

multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165-66 (10th Cir. 2010) (emphasis omitted). "In a suit against an insurance company to recover for losses, the jurisdiction where that loss occurred is substantial for venue purposes." *Id.* at 1167.

This lawsuit is centered upon Defendant's handling of Plaintiff's insurance claim for losses sustained as a result of a fire at Plaintiff's Arizona resort. (Doc. 2-1 at 2.) Further, a number of the allegations underlying the claims relate to site visits and to the effect of Defendant's alleged dilatory conduct on the clean-up, reconstruction, and operation of the Resort. (Doc. 2-1 at 3-11.) It is, therefore, indisputable (and is, in fact, undisputed) that, pursuant to Section 1391(b)(2), this action *could* have originally been filed in the District of Arizona.

### 2. Issues of Convenience and Fairness Warrant Transfer

The crux of the issue presented by Defendant's Motion is whether the transfer will enhance the convenience of the parties and witnesses, and is in the interest of justice. Factors bearing on the Court's consideration of convenience, fairness, and the interest of justice, include:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516. Culling from this non-exhaustive list of relevant considerations, Defendant focuses on Plaintiff's choice of forum, the convenience of the witnesses and costs of making the necessary proof, and the likelihood that Arizona law governs two of Plaintiff's claims. *See id.* ("Section 1404(a) is intended to place discretion in the district

court to adjudicate motions for a transfer according to an individualized, case by case consideration of convenience and fairness.").

### a. Plaintiff's Choice of Forum

As a general rule, the plaintiff's choice of forum is accorded substantial deference, and will only be overridden where the other factors weigh heavily in the defendant's favor. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (stating that the plaintiff's choice of forum is "given considerable weight" and will not be disturbed unless other factors tip the balance heavily in the defendant's favor.); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3rd Cir. 1995 ("[C]ourts normally defer to a plaintiff's choice of forum[.]"); *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) (stating that the plaintiff's choice of venue was "entitled to substantial consideration."). However, the usual deference accorded to the plaintiff's forum choice is diminished "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168; *see Berkel & Co. Contractors, Inc. v. Liberty Mut. Ins. Co.*, No. 15-9176-JAR, 2015 WL 9305646, at *2 (D. Kan. Dec. 21, 2015) (recognizing that although a "plaintiff's choice of forum is rarely disturbed . . . . [t]he choice . . . is not absolute"; and "[c]ourts accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum"); *Pendarvis v. Conocophillips Pipe Line Co.*, No. CIV.08-467-JHP, 2009 WL 1043973, at *2 (E.D. Okla. Apr. 17, 2009) ("While a plaintiff's choice of forum is usually entitled to deference, courts refuse such deference where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.").

The significant events that gave rise to this lawsuit—the fire, the site-inspections and consequent estimates, and the effect of Defendant's handling of the claim on the operation of the

Resort, occurred in Arizona. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 ("[T]he location of the alleged damage or loss is 'significant' for purposes of analyzing the convenience of a particular venue."). Further, although New Mexico is Plaintiff's principal place of business, nothing in the record suggests that the contract for insurance coverage was executed in New Mexico, or that the decision to deny coverage was made in this district. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168 (recognizing that some courts considering the "the locus of operative facts" in an action involving insurance coverage to be "either the site of the policy's execution or the site of the decision to deny coverage"). Instead, the insurance policy, which was brokered by a New Jersey-based company, bears the address of Plaintiff's headquarters in San Diego, California; and there is no suggestion that Defendant—a Wisconsin corporation with its principal place of business in Boston, made its coverage decisions in New Mexico. Finally, while Plaintiff makes much of the fact that Mr. Long, from his Albuquerque office, remained "extensively" and "actively" involved in Plaintiff's efforts to obtain a fair adjustment of its claim, even assuming that this fact (which is not reflected in the allegations of the complaint) is true, it does not enhance the Court's deference to Plaintiff's choice of forum. In examining the events and omissions that give rise to a claim, Defendant's activities, not Plaintiff's, inform the analysis. *See Goff v. Hackett Stone Co.*, No. 98-7137, 1999 WL 397409, *1 (10th. Cir. 1999) ("[V]enue statutes are generally designed for the benefit of defendants, and in determining what events or omissions give rise to a claim, the focus is on relevant activities of the defendant, not of the plaintiff.").

The foregoing notwithstanding, Plaintiff is a New Mexico corporation with its principal place of business in this state. Accordingly, its decision to file this lawsuit in its "home forum" is entitled to the Court's deference and is a factor that weighs against transfer. *See Navajo*

*Nation v. Urban Outfitters, Inc*., 918 F. Supp. 2d 1245, 1255 (D.N.M. 2013) (recognizing that a corporation's "home forum" is its residence—that is, the state in which it has its principal place of business."); *Woods v. United States*, No. 2:16-CV-1041-JCH/SMV, 2017 WL 4736722, at *5 (D.N.M. Oct. 19, 2017) (recognizing that where a plaintiff's chosen venue is its "home forum" the choice is given deference even where it lacks a significant connection to the operative facts).

### b.     The Accessibility of Witnesses and Other Sources of Proof

"The convenience of witnesses is the most important factor in deciding a motion" to transfer venue. *Emp'rs Mut. Cas. Co*., 618 F.3d at 1169.

> To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony"; and (3) "show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary."

*Id.* (alterations omitted). However, "a certainty of exact specificity of witnesses is not an absolute to the sustenance of movant's burden[.]" *Crossroads State Bank v. Savage*, 436 F. Supp. 743, 745 (W.D. Okla. 1977).

In support of its Motion, Defendant identifies twenty-three prospective witnesses and their locations, and indicates their involvement in the underlying events. (Doc. 7 at 6-7.) Of these twenty-three witnesses, sixteen reside in Arizona, three (including Mr. Long) reside in New Mexico, and four reside in California. (Doc. 7 at 7.) Defendant argues that, excluding Mr. Long, only two prospective witnesses (representatives of HUB International Services, a retail agent that communicated with the parties about the claim) could be compelled to testify in New Mexico, whereas a majority of witnesses could be compelled to testify in Arizona. *See* Fed. R. Civ. P. 45(c) (providing that, as to a witness who is not a party or a party's officer, the court may only command attendance at trial within 100 miles of where the person resides, is

9

employed, or regularly transacts business in person).   As such, Defendant argues that transferring this matter to the District of Arizona will maximize its ability to present live, as opposed to deposition testimony. (Doc. 7 at 8.)  Defendant argues, further, that even assuming that the witnesses would be willing to testify in person, substantial costs associated with travel and lodging could be saved by having the trial in Arizona instead of New Mexico. (Doc. 7 at 8.)

Plaintiff argues that the location of the witnesses does not weigh in favor of transfer. (Doc. 16 at 10.)  While Plaintiff challenges the adequacy of Defendant's argument pertaining to the three inconvenience-related factors set forth in *Employers Mutual Casualty Company*, it focuses particularly on the fact that Defendant has not demonstrated that any of the identified witnesses are unwilling or unable to travel to New Mexico for trial.  (Doc. 16 at 9.)   Plaintiff cites *Lloyds of London Syndicate 2003 v. Fireman's Fund Ins. Co. of Ohio* No. 15-CV-2681-DDC-GLR, 2016 WL 1170954, at *11 (D. Kan. Mar. 24, 2016), and *Berkel & Company Contractors, Incorporated*, 2015 WL 9305646 at *3, in support of its argument.  In each of these cases, the Court refused to consider the location of the witnesses as a factor weighing in favor of a venue transfer because the respective defendants had failed to show that the witnesses were unwilling to travel to the respective plaintiffs' chosen forum to appear for trial.  *Lloyds of London Syndicate 2003*, 2016 WL 1170954, at 11; *Berkel & Company Contractors, Incorporated*, 2015 WL 9305646 at *3.   While the Court takes Plaintiff's point—that is, Defendant has not shown that the identified witnesses are unwilling to travel to New Mexico for trial, the Court is not persuaded that a narrow focus on the willingness or unwillingness of witnesses to travel to New Mexico is warranted here.

This case is in the early stages of litigation.  However, it is clear from the complaint and from the witnesses who have been identified by Defendant that the majority of witnesses—

including those who were involved in inspecting the Resort and estimating the cost of repair—are in Arizona. Even assuming that all of Defendant's and Plaintiff's Arizona-based witnesses were willing to travel to New Mexico for trial, considerations of cost and time associated with their attendance at trial in this forum cannot be ignored. These considerations would sensibly be alleviated by presenting deposition, instead of live, testimony—an alternative that would save the parties' costs and save the witnesses' time, but which is not preferred and, as Defendant argues, could be unfair. *See Garcia-Martinez v. City and County of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004) ("The preference for a witness's attendance at trial is axiomatic[.]"); *see also Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F.Supp. 667 (D. Kan. 1993) (recognizing that it is "unfair to force [a defendant] to present a significant portion of [its] case by deposition). (Doc. 7 at 7-8.)

In regard to the issue of cost burdens associated with a trial in New Mexico, Plaintiff attempts to minimize the significance of Defendant's contention that it would bear a greater expense in bringing witnesses to New Mexico than Plaintiff would bear in bringing witnesses to Arizona by comparing the circumstances here to those of *Meek & Associates, Incorporated v. First Union Insurance Group*, No. Civ. A. 99-2519-CM, 2001 WL 58839, at *4 (D. Kan. Jan. 18, 2001). (Doc. 16 at 11.) This comparison, however, does not support Plaintiff's position. In *Meek*, the court noted that of thirty-two potential witnesses, fourteen lived in states outside of either party's preferred venue. *Id.* at *3. Seventeen witnesses, each of whom were, or had previously been, the defendant's employee, lived in the defendant's preferred venue. *Id.* at *3. Finding it "unremarkable" that "witnesses associated with the plaintiff reside[d]" in the plaintiff's chosen forum and witnesses associated with the defendants resided in the defendant's

preferred forum, the court concluded that the convenience-of-the-witnesses factor was of "neutral" weight. *Id.* at *4.

The circumstances of this case do not resemble those in *Meek*. Defendant has identified eleven prospective Arizona-based witnesses who are not employed by either party, but who were variously involved in investigating the fire, inspecting the damages, and estimating the cost of repairing and rebuilding the Resort. (Doc. 7 at 6-7.) That a majority of witnesses reside in Arizona and that these witnesses are not employed by Defendant is a circumstance that weighs in favor of transfer. *See Navajo Nation v. Urban Outfitters, Inc.*, 918 F.Supp.2d 1245, 1257 ("Where the key witnesses are employees of the party seeking a transfer, their convenience is entitled to less weight because the party is able to compel their attendance."); *U.S. United Ocean Servs., LLC v. Powerhouse Diesel Servs., Inc.,* 932 F.Supp.2d 717, (E.D. La. 2013) (recognizing that the convenience of non-party witnesses, rather than that of employee witnesses, is accorded greater weight in considering the convenience of the witnesses). That these non-employee witnesses are possessed of significant information regarding the damage to, and cost of repairing, the Resort also weighs in favor of transfer. *See Navajo Nation*, 918 F.Supp.2d at 1256 (stating that the "convenience of key witnesses with material testimony" may be accorded greater weight than the presence of "numerous, but less important witnesses" in the plaintiff's chosen forum).

Finally, it bears repeating that the *convenience of witnesses is* the most important factor in a venue transfer analysis. *Emp'rs Mut. Cas. Co*., 618 F.3d at 1169. Under the circumstances of this case, even were the Court to set aside considerations of cost and litigation preferences (which considerations are primarily driven by counsel and by the parties), the Court concludes that the convenience-of-witnesses factor weighs heavily in favor of transfer. It makes little sense to request sixteen prospective witnesses to travel to New Mexico from Arizona to save three

prospective witnesses (one of whom is a "party" witness) the inconvenience of traveling to Arizona—where the facts giving rise to this case occurred. That Plaintiff's Albuquerque-based counsel prefers to litigate this matter closer to its home office does not tip the balance of this factor Plaintiff's favor. (Doc. 16 at 7.)

A number of courts faced with similar facts have reached an according conclusion. *See e.g.*, *Daniels v. Cessna Aircraft Co.*, No. CIV.A. 08-2625-CM, 2009 WL 1226741, at \*2 (D. Kan. Apr. 30, 2009) ("Although this case is in the initial stage of litigation, the facts alleged suggest that the majority of the witnesses and evidence will be in the Wichita area. . . . Because most of the witnesses, parties, and counsel reside in the Wichita area and the majority of the evidence is located in Wichita, this factor weighs significantly in favor of [the defendant's motion to transfer venue]."); *Tipnis v. Emery Tel.*, No. 06-CV-02402-WYD-CBS, 2007 WL 1306495, at \*4 (D. Colo. May 3, 2007) (holding that a venue transfer was warranted where the plaintiff had not identified anyone other than himself who resided in his chosen forum, "the vast majority of evidence" was in the prospective transferee-district, as were "numerous individuals who likely possess information relevant to the claims and defenses"); *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993) (weighing the convenience-of-witnesses factor "strongly in the defendant's favor" where eleven of sixteen prospective witnesses—including eye witnesses and officials who were most familiar with the location and consequences of the at-issue accident lived closer to the requested transferee district); *Pope v. Missouri Pac. R. Co.*, 446 F. Supp. 447, 450 (W.D. Okla. 1978) (weighing the convenience-of-witnesses factor in favor of the defendant where "the only connection [Plaintiff's chosen forum] has with this case is that [the p]laintiff reside[d] [t]here; [whereas] the record in this case indicate[d] that the accident giving rise to Plaintiff's action occurred in [the prospective

transferee district] and . . . all of the prospective witnesses . . . with the exception of [the p]laintiff and [the p]laintiff's expert witness for whom travel and expense are customary [resided in the prospective transferee district]).

### B. Prospective Choice-of-Law Issues

In support of its Motion, Defendant argues that while New Mexico law does not govern any of Plaintiff's claims, Arizona law governs at least two—namely, the unfair claims practices and unfair trade practices claims. (Doc. 7 at 10-11.) As such, Defendant argues, the District Court of Arizona, which is familiar with Arizona law, is the appropriate venue for litigation of this matter. (Doc. 7 at 11.) Plaintiff concedes that its bad faith and breach of contract claims, which it characterizes as its "two main claims" are not governed by New Mexico law.[1] (Doc. 16 at 15.) However, Plaintiff argues that Defendant has not demonstrated that its unfair claims practices and unfair trade practices claims are governed by Arizona law rather than the law of New Mexico; and, Plaintiff argues, even assuming these claims are governed by Arizona law, the issues are simple and the federal courts of either district are well suited to hear them. (Doc. 16 at 16-17.)

"In diversity of citizenship cases, in which state law provides the substantive rules of decision, it is an advantage to have that law applied by federal judges who are familiar with the governing state law." 15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, Federal Practice and Procedure § 3854 (4th ed. 2013); *see Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 ("In a diversity action, courts prefer the action to be adjudicated by a court sitting in

---

[1] The parties agree that Plaintiff's bad faith and breach of contract claims are governed either by California law or New Jersey law because the contract was consummated in one of those two states. (Doc. 7 at p. 10; Doc. 16 at 15.) *See e.g., State Farm Mut. Ins. Co. v. Conyers*, 784 P.2d 986, 990-91 (N.M. 1989) (recognizing that New Mexico courts apply the *lex loci contractus* approach to resolving choice-of-law issues in insurance litigation, pursuant to which the contract is governed by the law of the state in which the contract was consummated; and recognizing that "[a] contract is consummated where the last act necessary for its formation was performed."); *see also FDIC v. Hiatt*, 872 P.2d 879 (N.M. 1994) (applying the *lex loci contractus* rule to conclude that an agreement that was executed in California is governed by California law).

the state that provides the governing substantive law."). Closely aligned with this interest-of-justice factor is the principle that "the administration of justice is better served when the action is litigated in the forum that encompasses the locus of operative facts and thus may have a particular interest in the proper resolution of the dispute. Wright, *et al.*, *supra*.

As an initial matter, the fact that Plaintiff's contract-related claims are not governed by the substantive law of New Mexico or of Arizona weighs neither in favor of, nor against venue transfer. Whether this matter is litigated in New Mexico or in Arizona, the presiding judge will be required to apply the contract law of a state outside of its district. And both courts are equally qualified to do so. *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1170 (recognizing that federal judges are qualified to decide issues of extra-forum state law).

As to Plaintiff's bad faith claims, however, Defendant's Motion to transfer venue is well founded. Plaintiff's assertion that its unfair claims and unfair trade practices claims are governed by New Mexico law appears to be a tenuous theory that is largely contravened by the factual allegations in the complaint and by the relevant law. Plaintiff's unfair trade practices claim is founded on Defendant's alleged failure to adjust the insurance claim according to the terms of the policy. (Doc. 2-1 at 12-13.) Plaintiff's claim for unfair claims practices stem from allegations that Defendant concealed bids pertaining to the repair and reconstruction of the Resort, failed to promptly investigate the claim, and failed to communicate with Plaintiff and its representatives regarding the inspections and other matters related to the adjustment of the claim. (Doc. 2-1 at 13.)

In a choice-of-law analysis, consumer protection statutes, including those that prohibit unfair trade and claims practices are treated as tort analogs. *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 663 F.Supp.2d 1138, 1150-51 (D.N.M. 2009); *see Kreischer v. Armijo*,

118 N.M. 671, 884 P.2d 827 (Ct.App.1994) (dismissing a New Mexico UPA claim on the ground that the plaintiff's allegations "sound[ed] in contract rather than in tort[,]" and thus did not state a claim under the UPA). And, in New Mexico, the choice of law analysis applicable to tort claims is governed by the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." *Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 377 (N.M. Ct. App. 2006). "The place of the wrong is the location of the last act necessary to complete the injury." *Montano v. Frezza*, 352 P.3d 666, 669-70 (N.M. Ct. App. 2015), *rev'd on other grounds* 393 P.3d 700 (N.M. 2017). In bad faith tort claims this can mean either the place where the bad faith took place, such as the location of the insurance agent's office, or the place where the insured suffered economic loss, such as the location of the insured property.[2] Douglas G. Houser, *Choice of Law for Bad Faith Insurance Claims*, 30 Tort & Ins. L.J. 37, 40 (1994). Applying these principles to the circumstances here, Plaintiff's claims of unfair trade and claims practices are likely governed either by the substantive law of Arizona (where the property is located and the alleged economic loss occurred) or of the state in which the insurance agent's office is located.[3] (Doc. 17 at 6.) Based on the record before it, the Court is unable to conclude that these claims are governed by New Mexico law.

In sum, this Court and the United States District Court for the District of Arizona are equally competent to interpret and apply California or New Jersey contract law to Plaintiff's

---

[2] Plaintiff urges this Court to consider the possibility that New Mexico might be the "place of the wrong" because, from his office in Albuquerque, Mr. Long communicated by telephone with Defendant's Arizona-based adjuster. (Doc. 16 at 16.) However, Plaintiff provides no authority to support its undeveloped assertion that Mr. Long's presence in New Mexico during these telephone calls could reasonably lead to the conclusion that New Mexico was "the place of the wrong."

[3] Although Defendant's principal place of business is in Boston, Defendant argues that, because its adjustor handled the claim out of his home office in Arizona, the "last act" that gave rise to Plaintiff's bad faith claims occurred in Arizona. (Doc. 17 at 7.)

contract claims. However, the Arizona-based court is uniquely qualified to apply Arizona law which, it appears at this stage of the proceedings, is likely to govern Plaintiff's bad faith claims. Further, insofar as Arizona is the "forum that encompasses the locus of operative facts," the interest of justice will be advanced by permitting an Arizona-based court to preside over the resolution of this dispute. Wright, *et al.*, *supra.*

### III.  Conclusion

This lawsuit could have been originally filed in Arizona. Plaintiff chose to file the lawsuit in New Mexico, which is its principal place of business, and its home forum. Plaintiff's choice of forum is entitled to deference, and weighs against transfer. On balance, however, the weight accorded to Plaintiff's choice of forum is overwhelmed by other relevant considerations, which weigh in favor of granting Defendants' request to transfer venue. Considering that the convenience of the majority of non-party witnesses would be served by transferring this matter to the District of Arizona; and considering, further, that Plaintiff's bad faith claims are likely to be governed by the law of Arizona—the ostensible "place of the wrong" and the locus of operative facts—the Court concludes that it is appropriate, pursuant to 28 U.S.C. § 1404(a), to transfer this matter to the United States District Court for the District of Arizona.

Having so concluded, the Court does not consider Defendant's alternative argument that dismissal is warranted based on a theory of *forum non conveniens*.

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Transfer Venue to the U.S. District Court of Arizona, Tucson Division, or, Alternatively, Dismiss on Grounds of Forum Non Conveniens and Supporting Authority* (Doc. 7.), filed July 31, 2017 is **GRANTED**.

**IT IS FURTHER ORDERED** that this cause shall be **transferred** to the United States District Court for the District of Arizona, Tucson Division.  **SO ORDERED** this 22nd day of December, 2017, in Albuquerque, New Mexico.

_____
**KIRTAN KHALSA**
**United States Magistrate Judge**
**Presiding by Consent**